## STATEMENT OF FACTS

I, James Clinton Judd, a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), being duly sworn, depose, and state as follows:

1.      I am a Special Agent of the FBI and have been so employed for approximately 25 years. I am currently assigned to the Oklahoma City Division, Tulsa Resident Agency of the FBI, and am authorized and responsible for conducting investigations of numerous criminal and national security violations falling within the FBI's jurisdiction.  During my career as an FBI Agent, I have investigated violent crimes and threats against national security to include crimes against the United States Government.

2.      As a federal agent, I am authorized to investigate violations of the laws of the United States, and to execute warrants issued under the authority of the United States.

3.      The statements contained in this Affidavit are based in part on: information provided by law enforcement officers, Special Agents of the FBI, and other investigations that I have received, directly or indirectly, from other law enforcement agents; independent investigation; and my experience, training, and background as a Special Agent with the FBI.  This Affidavit is written to establish probable cause to search as described herein, and I have not included every detail of the investigation.  In addition, unless otherwise indicated, all statements contained in this Affidavit are summaries in substance and in part.  The following is true to the best of my knowledge and belief.

4.      As will be shown below, there is probable cause to believe that violations of Title 18, United States Code (U.S.C), Section 1752(a)(1) and (2) (Unlawful Entry on Restricted Buildings or Grounds), and Title 40 U.S.C. Section 5104(e)(2)(D) and (G) (Violent Entry and Disorderly Conduct on Capitol Grounds) occurred.

5.      VENUE: the facts and circumstances alleged in this affidavit occurred within the District of Columbia, among other places.

6.      SUBJECT: the subject and target of the investigation is ANDREW ERICSON, date of birth (DOB) 07/29/1997, hereinafter referred to as ANDREW ERICSON.

## STATEMENT OF FACTS

7.      The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

8.      On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

9.      On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C.  During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020.  The joint session began at approximately 1:00 p.m.  Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

10.      As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol.  As noted above, temporary and permanent barricades were in place around the

exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

11.     At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building.  The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

12.     At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured.  Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

13.     Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers.  Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day.  In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured.  The proceedings resumed at approximately 8:00 pm after the building had

been secured.  Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

14.     During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

15.     On January 8, 2021, United States Attorney (USA) Trent Shores, Northern District of Oklahoma, contacted Supervisory Special Resident Agent (SSRA) Terry Heatherman, Tulsa Resident Agency, Oklahoma City Division, regarding Snapchat photographs USA Shores had received in which a male by the name of ANDREW ERICSON was in the United States Capitol Building on January 6, 2021.  USA Shores stated he believed ERICSON resided in Muskogee, Oklahoma, which is in the Eastern District of Oklahoma.   Affiant received the Snapchat photographs from SSRA Heatherman on January 8, 2021.

16.     Snapchat is a mobile application (app) for Android and iOS (Apple) devices. One of the core concepts of the Snapchat app is that any picture, video, or message sent is available to the recipient for only a short time before it becomes inaccessible. Snapchat accounts are linked to a user's telephone number(s). The ability to identify an account, or accounts, linked to a telephone number is a feature offered by Snapchat so friends, family, and/or associates can look up accounts belonging to the contact list saved in their telephone. Snapchat allows the user to store media in a private storage area accessible only to the user, which may be stored on the user's mobile device.

17.     On January 12, 2021, a review of open source and FBI database searches revealed ANDREW ERICSON is associated with telephone numbers 918-577-2899 and 918-683-1315. Further, this query revealed the telephone number 918-577-2899 is associated with ANDREW

4

ERICSON and a Snapchat account under the username of andrewericson77 and a display name of

Andrew Ericson.  In the experience of Affiant, persons may have more than one account with

social media accounts such as Snapchat utilizing different user and display names.  Based upon

this investigation, Affiant has reason to believe ANDREW ERICSON used a personal cellular

device to take at least two photographs of himself and livestream his entrance into the United

States Capitol Building.

18.     The two photographs, both posted on the Snapchat page of ANDREW ERICSON

in the same approximate time frame of 3:30 p.m., appear to show ERICSON taking a "selfie" in

one photograph and having someone else take a photograph of him in the other photograph, while

inside the United States Capitol Building.   Both photographs, which are pasted below this

paragraph, display the name Andrew Ericson.

 

19.     On January 13, 2021, Special Agent James Hardy, United States Capitol Police,

Threat Assessment Section, was shown the photographs received by Affiant from SSRA

Heatherman.  Based on the information SA Hardy has learned from the investigation, SA Hardy

was able to confirm the pictures of ERICSON were taken in the United States House of Representatives Speaker's Conference Room, H-230, of the United States Capitol Building.

20.     An individual referred to herein as Witness 1 submitted a tip to the FBI's National Threat Operations Center (NTOC) on January 11, 2021. Witness 1 told NTOC that ANDREW ERICSON was livestreaming his participation in the Capitol siege on January 6, 2021, and Witness 1 had a previous professional relationship with the subject in the past which allowed Witness 1 to recognize ANDREW ERICSON.

21.     On January 15, 2021, Affiant interviewed Witness 1, who provided the following information:  On January 6, 2021, Witness 1 saw a post from ANDREW ERICSON on Snapchat. Witness 1 had not seen ANDREW ERICSON on Snapchat prior to this date.  Witness 1 stated ANDREW ERICSON was livestreaming his entrance into the United States Capitol Building and then walking around inside the building.  During the livestream, Witness 1 also saw ERICSON enter what Witness 1 thinks is Nancy Pelosi's office and take what appeared to be a beer out of a refrigerator in an office.  Witness 1 was able to capture two segments of the live-streaming video of ANDREW ERICSON.  Witness 1 was unable to capture all of the livestream video ANDREW ERICSON took of himself and the crowd.  Witness 1 stated IT did not see any violent acts committed by ANDREW ERICSON but noted that IT (Witness 1) did hear ERICSON screaming and yelling during the livestream.

22.     Witness 1 told Affiant that IT and ANDREW ERICSON lived in neighboring communities, had known one another since high school, when they became acquainted through mutual friends, among other things.  Witness 1 said IT clearly recognized ERICSON in the snapchat pictures and livestream based upon ITs knowledge of him as described above.

23.     Witness 1 provided Affiant with the two segments of the livestream Witness 1 was able to capture while watching ERICSON's livestream on ITs device. Both videos display the name "ANDREW ERIKSON." During a subsequent interview with Affiant, Witness 1 stated IT added the name of ANDREW ERICSON into ITs contact list with an incorrect spelling and thus, the name on ITs Snapchat application shows up with the incorrect spelling. Witness 1 stated both livestream videos are from ANDREW ERICSON.  The first video from ANDREW ERICSON (with the display name showing Andrew Erikson) was at 2:21 p.m. on January 6, 2021, and showed people outside of the United States Capitol Building as a group of people were climbing the stairs into the United States Capitol.  This video lasted approximately 26 seconds.  The second video (also with the display name Andrew Erikson) was at 2:24 p.m. and showed a large number of people inside the United States Capitol Building.  This video lasted approximately 15 seconds. Witness 1 stated ANDREW ERICSON was the person livestreaming the videos. Witness 1 told Affiant the ANDREW ERICSON livestream video was approximately 2-3 minutes in length and that ANDREW ERICSON posted approximately 10-15 videos and pictures on Snapchat of himself inside and around the United States Capitol Building. Witness 1 did not capture any of those photographs or videos beyond the two videos sent to Affiant. Witness 1 told Affiant that Witness 1 remembered one Snapchat photo ANDREW ERICSON posted where another person took a photograph of ANDREW ERICSON sitting in a chair in what might be Nancy Pelosi's office.

24.     During Witness 1's subsequent interview with Affiant, Witness 1 said IT is "1,000% certain of the identity" of ANDREW ERICSON in the Snapchat livestream IT saw. Witness 1 stated IT was able to recognize both the face and voice of ANDREW ERICSON in the livestream video.

25.     A review of the Oklahoma Driver's License database revealed a driver's license photograph of ANDREW ERICSON.  A comparison of the Snapchat photographs received by Affiant from SSRA Heatherman depicting ANDREW ERICSON in the United States Capitol and the Oklahoma Driver's License for ANDREW ERICSON, leads Affiant to believe the person in the Snapchat photographs and the driver's license photograph are the same person.  This same review indicated ANDREW ERICSON resides in Muskogee, Oklahoma, which is located within the Eastern District of Oklahoma.

## CONCLUSION

26.     Based on the foregoing, your affiant submits that there is probable cause to believe that ANDREW ERICSON violated 18 U.S.C. § 1752(a)(1) and (2), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; or attempts or conspires to do so.  For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

27.     Your affiant submits there is also probable cause to believe that ANDREW ERICSON violated 40 U.S.C. § 5104(e)(2)(D) and (G), which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive

conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

_____

James Clinton Judd
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 20th day of January 2021.

_____

Zia M. Faruqui
United States Magistrate Judge